JASON S. NUNNERMACKER, ESQ. (JN 2849)
MICHAEL P. MELITI, ESQ.  (MM 5020)
GUAGLARDI & MELITI, LLP
365 West Passaic Street, Suite 130
Rochelle Park, New Jersey 07662
201-947-4100
jnunnermacker@adgmlaw.com
Attorney for Plaintiff

---

|  |  |  |
|---|---|---|
| | **:** | UNITED STATES DISTRICT COURT |
| **DONOVAN ROSE,** | **:** | DISTRICT OF NEW JERSEY |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | CIVIL CASE NO.: |
| **v.** | **:** | |
| | **:** | |
| **CLIFTON PUBLIC SCHOOLS a/k/a** | **:** | |
| **CLIFTON PUBLIC SCHOOLS BOARD** | **:** | |
| **OF EDUCATION AND DAVID BYRON,** | **:** | |
| **individually,** | **:** | **PLAINTIFF'S COMPLAINT AND** |
| | **:** | **JURY DEMAND** |
| **Defendants.** | **:** | |
| | **:** | |

Plaintiff Donovan Rose ("Plaintiff"), residing in Bloomfield, Essex County, New Jersey,

by way of complaint against the Clifton Public Schools a/k/a Clifton Public Schools Board of

Education ("BOE") and David Byron, individually, ("Byron") hereby claims as follows:

**VENUE AND JURISDICTION**

1.      This Court has jurisdiction pursuant to 28 <u>USC</u> §1331 over Plaintiff's federal-

based claims.

2.      This Court has supplemental jurisdiction pursuant to 28 <u>USC</u> §1367 over

Plaintiff's State-based claims.

3.      Venue is proper in this Court pursuant to 28 <u>USC</u> §1391(b) as all individual

parties reside within this jurisdiction of this Court and the public entity defendant is within this

Court's jurisdiction.

## PARTIES

4.      Plaintiff is an African-American employee of the BOE as a tenured custodian currently assigned to the Christopher Columbus Middle School ("CCMS"), a school within the jurisdiction of the BOE.

5.      Plaintiff was born in Jamaica and immigrated to the United States in 2008 when he became a naturalized citizen.

6.      As a citizen of the United States, he, as all citizens regardless of race, enjoys statutory and constitutional protected civil rights, specifically as to his employment with his State employer, the BOE.

7.      Plaintiff enjoys tenure pursuant to NJSA 18:28-1, et. seq., and is reappointed each and every year under written employment contracts between him and the BOE.

8.      The BOE, a public entity, is a board of education established under the laws of the State of New Jersey to operate, maintain, and monitor the public-school system in Clifton, New Jersey, including but not limiting to, employing and supervising custodians, including Plaintiff.

9.      Defendant Byron is a Caucasian employee of the BOE who, at all relevant times, was a management-level employee of the BOE and supervisor of the Plaintiff at the CCMS.

## FACTS COMMON TO ALL COUNTS

10.      Plaintiff commenced employment with the BOE in 2014 as a custodian.

11.      Plaintiff has been subsequently re-appointed each and every year under annual written employment contracts to serve as a custodian for the BOE.

12.      Thereafter, Plaintiff was assigned to the CCMS at the start of the 2018-2019 school year which is the same year that Plaintiff earned status a tenured employee.

2

13.     Byron at that time, and through the end of the 2021-2022 school year, was a management-level employee of the BOE and served as Plaintiff's supervisor.

14.     As the head custodian for the CCMS, Byron is a management-level employee of the BOE who had the authority to make and effectuate decisions affecting Plaintiff's employment, including providing Plaintiff with daily instructions and job duties as to Plaintiff's employment.

15.     Byron specifically advised Plaintiff several times that Byron could have Plaintiff removed from the CCMS and assigned to less desirable working assignments and that Bryon, also, had the ability to promote Plaintiff within the BOE.

16.     Almost immediately upon Plaintiff's assignment to the CCMS, Byron, Caucasian, began imposing and fostering a hostile and abusive working environment upon Plaintiff because of Plaintiff's race.

**The "Black One"**

17.     Byron for several years, including the past two years, continually referred to Plaintiff as the "black one" when referring to Plaintiff, including in Plaintiff's presence, to other employees of the BOE.

18.     Plaintiff complained to Byron, his immediate superior, but the hostile treatment continued.

19.     As Plaintiff was never provided any notices and/or any other information explaining who he should complain and/or communicate to regarding any discriminatory harassment during his BOE employment, he reasonably believed the only appropriate person to do so would be to Byron.

**Plaintiff Held Captive**

20.     In March or April 2022, while Plaintiff and other CCMS custodians were cleaning a classroom, Byron instructed Plaintiff to go to a custodian closet to retrieve cleaning solution/chemicals.

21.     Within the custodian closet, as to store cleaning chemicals safely and out-of-reach of children, there is a cage in the closet that can be locked via a padlock on a sliding door.

22.     As Plaintiff was doing as instructed, getting the cleaning supplies from the caged-in portion of the custodian closet, Byron immediately pursued Plaintiff to the closet and locked the supply cage behind Plaintiff.

23.     This had Byron's intended effect of Plaintiff being locked in a cage like an animal.

24.     Plaintiff was imprisoned in the cage for approximately five (5) minutes while Byron stood there mocking Plaintiff.

25.     Specifically, when Plaintiff asked why Byron imprisoned him, Byron, incredulously exclaimed, "you belong in a cage because you are black!"

26.     By this point, and compounding the incredible embarrassment and emotional distress Plaintiff was suffering at the hands of his BOE supervisor, Plaintiff's colleagues appeared in the vicinity of the closet a) witnessing Plaintiff's captivity and b) hearing Byron tell Plaintiff that he belonged in a cage for no other reasons than Plaintiff is "black."

27.     Plaintiff was immediately, and remains, sickened, humiliated and emotionally damaged that his BOE supervisor held him captive in a cage like an animal simply because he is "black" and then stood there laughing and mocking him for it at the same time.

28.     The Defendants' respective intentional racial discrimination and harassment that has been thrusted upon Plaintiff for years, including being held captive like an animal as Byron's prisoner simply for being "black," has detrimentally affected Plaintiff by way of causing Plaintiff extensive physical, mental and emotional distress.

## COUNT 1
### (Action Pursuant to 42 USC §1983 for Violation of 42 USC §1981 Against the BOE and Byron)

29.     Plaintiff repeats and realleges each and every fact set forth above as if set forth herein at length.

30.     42 USC §1983 provides Plaintiff a "civil action for deprivation of rights" secured by the United States Constitution and any law enacted thereunder. Specifically:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

31.     42 USC §1981 is a Federal law that prohibits racial discrimination in the performance of contracts, including employment contracts, and ensures that all American citizens shall enjoy the benefits, terms, privileges and conditions of a contractual relationship without regard to race.

32.     Plaintiff is an employee of the BOE pursuant to a contract of employment and has been re-appointed each year by the BOE under such contract of employment.

33.     The BOE and Byron, Plaintiff's supervisor and a management level employee of the BOE, however, modified Plaintiff's employment contract and/or deprived the Plaintiff of the benefits, terms, and conditions of his contractual relationship by inflicting racially charged harassment upon Plaintiff throughout his employment, specifically the past two years, including

but not limited to Byron a) consistently referring to Plaintiff as the "black one" during the course of Plaintiff's employment and b), incredulously, locking Plaintiff in a cage in the presence of Plaintiff's colleagues simply because he is "black".

34.     As such, Defendant Byron acted with purposeful discrimination towards the Plaintiff and was personally involved as to the racial discrimination inflicted upon Plaintiff.

35.     The racial discrimination and harassment was pervasive as for several years, including the past two years, as Defendant Byron continually referred to Plaintiff as the "black one."

36.     The racial discrimination and harassment was severe as Defendant Byron, Plaintiff's supervisor and management-level employee of the BOE, imprisoned Plaintiff in a cell-like structure for no other reason than Plaintiff being an African-American.

37.     The Defendants' respective intentional racial discrimination and harassment that has been thrusted upon Plaintiff for years has detrimentally affected Plaintiff by way of causing Plaintiff extensive physical, mental and emotional distress.

38.     The racial discrimination and harassment forced upon Plaintiff, including but not limited to, being a) repeatedly called, and referred to, as the "black one," and b) held captive for no other reason than he is "black", will detrimentally affect any reasonable African American.

39.     The Defendants' actions, as alleged herein, were malicious, reckless and willfully indifferent to Plaintiff's rights thereby warranting an award of punitive damages.

40.     Pursuant to 42 USC §1988, Plaintiff demands all attorney's fees and costs, including expert costs, to prosecute the within lawsuit, as a result of the Defendants' respective violations of 42 USC §1983 and 42 USC §1981.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount to be proven at trial including a) an amount in excess of $500,000.00; b) attorney's fees and other professional costs; c) punitive damages; and d) all other relief that the Court deems fair and just.

## COUNT TWO
### Action Pursuant to 42 USC 1983 for Violation of Equal Protection Clause of the 14th Amendment of the United States Constitution Against all Defendants

41.     Plaintiff repeats and realleges each and every fact set forth above as if set forth herein at length.

42.     42 USC §1983 provides Plaintiff a "civil action for deprivation of rights" secured by the United States Constitution and any law enacted thereunder specifically:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or their proper proceeding for redress…

43.     The 14th Amendment of the United States Constitution ensures that all citizens of the United States shall be entitled to "equal protection of the laws" of the United States.

44.     There are several laws of the United States that guard against the discrimination of citizens as a result of their race, including 42 USC 1981.

45.     The Defendants inflicted intentional racial discrimination and harassment because of Plaintiff's status as a member of a protected class, his race.

46.     As a result of Plaintiff being an African-American, Defendant's treated Plaintiff much different during the course of his employment then they treated similarly situated employees who were not African-American.

7

47.     For example, Plaintiff was incessantly referred to the "black one" by his BOE supervisor, Defendant Byron, throughout out his employment at the CCMS, and was locked in a cage at CCMS simply because he is African-American.

48.     Defendant Byron was personally and affirmatively involved in the racial discrimination and harassment thrown upon Plaintiff as he often called Plaintiff the "black one" and he locked Plaintiff in a case because Plaintiff is "black."

49.     The racial discrimination and harassment forced upon Plaintiff, including but not limited to, being a) repeatedly called, and referred to, as the "black one," and b) held captive for no other reason than he is "black," will detrimentally affect any reasonable African American.

50.     The Defendants' respective intentional racial discrimination and harassment that has been thrusted upon Plaintiff for years has detrimentally affected Plaintiff by way of causing Plaintiff extensive physical, mental and emotional distress.

51.     The Defendants' actions, as alleged herein, were malicious, reckless and willfully indifferent to Plaintiff's rights thereby warranting an award of punitive damages.

52.      Pursuant to 42 USC §1988, Plaintiff demands all attorney's fees and costs, including expert costs, to prosecute the within lawsuit, as a result of the respective Defendants' violations of 42 USC §1983 and the 14th Amendment of the United States Constitution.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, in an amount to be proven at trial including a) an amount in excess of $500,000.00; b) attorney's fees and other professional costs; c) punitive damages; and d) all other relief that the Court deems fair and just.

## COUNT THREE
### Action Pursuant to the New Jersey Law Against Discrimination as to BOE

53.     Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

54.     During Plaintiff's employment at the CCMS, including specifically the past two years, Plaintiff has been exposed to hostile working conditions for no other reason than his skin color.

55.     Plaintiff's supervisor, Defendant Byron, has made pervasive racial epithets and comments to, and about, Plaintiff, including consistently referring to Plaintiff as the "black one."

56.     Further, Defendant Byron intentionally locked Plaintiff in a cage full of dangerous chemicals advising Plaintiff that he did so only because Plaintiff is "black."

57.     Such working conditions have been pervasive and severe throughout the Plaintiff's employment at the CCMS so that any reasonable African-American would believe his/her employment conditions had been altered and/or abusive and hostile.

58.     The Defendants' respective intentional racial discrimination and harassment that has been thrusted upon Plaintiff for years has detrimentally affected Plaintiff by way of causing Plaintiff extensive physical, mental and emotional distress.

59.     The Defendants' actions, as alleged herein, were malicious, reckless and willfully indifferent to Plaintiff's rights thereby warranting an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendant BOE in an amount to be proven at trial including a) an amount in excess of $500,000.00; b) attorney's fees and other professional costs; c) punitive damages; and d) all other relief that the Court deems fair and just.

**COUNT FOUR**
**Action Pursuant to the New Jersey Law Against Discrimination against Defendant Byron for Aiding and Abetting a Hostile Work Environment**

60.    Plaintiff repeats and realleges the facts set forth above as if set forth herein at length.

61.    During Plaintiff's employment at the CCMS, including specifically the past two years, Defendant Byron, Plaintiff's supervisor and management-level employee for the BOE, has willfully and purposefully committed hostile acts toward Plaintiff.

62.    Plaintiff's supervisor, Defendant Byron, has made pervasive racial epithets and comments to, and about, Plaintiff, including consistently referring to Plaintiff as the "black one."

63.    Further, Defendant Byron intentionally locked Plaintiff in a cage full of dangerous chemicals advising Plaintiff that he did so only because Plaintiff is "black."

64.    Defendant Byron certainly knew his role and participation in the illegal discriminatory environment that he and the BOE were thrusting upon Plaintiff.

65.    Defendant Byron, by constantly referring to Plaintiff as "black" and locking Plaintiff in a cage because he is "black," certainly knowingly and substantially aided the BOE's infliction of an abusive and hostile work environment at CCMS for Plaintiff.

66.    Such working conditions have been pervasive and severe throughout the Plaintiff's employment at the CCMS so that any reasonable African-American would believe his/her employment conditions had been altered and/or abusive and hostile.

67.    The Defendants' respective intentional racial discrimination and harassment that has been thrust upon Plaintiff for years has detrimentally affected Plaintiff by way of causing Plaintiff extensive physical, mental and emotional distress.

68.    The Defendants' actions, as alleged herein, were malicious, reckless and willfully indifferent to Plaintiff's rights thereby warranting an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendant Byron in an amount to be proven at trial including a) an amount in excess of $500,000.00; b) attorney's fees and other professional costs; c) punitive damages; and d) all other relief that the Court deems fair and just.

### JURY DEMAND

Plaintiff demands a trial by jury.

GUAGLARDI & MELITI, LLP


Jason S. Nunnermacker, Esq.
Attorney for Plaintiff
365 W. Passaic Street, Suite 130
Rochelle Park, NJ 07662
201-947-4100
jnunnermacker@adgmlaw.com